UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

C. JEFFERY EVANS,

         Plaintiff,

   v.

Y'S FRIES, INC.,

         Defendant.

NO. CIV. S-10-2297 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Y's Fries, Inc.'s ("defendant") motion for summary judgment. Defendant contends the instant action is barred by a Settlement Agreement and General Release plaintiff C. Jeffery Evans ("plaintiff") previously executed with defendant's primary shareholder, Marilyn Yawnick.[1] Plaintiff opposes the motion, arguing this action is not encompassed within the release of claims contained in the settlement agreement.

---

[1] Because the court finds that oral argument will not be of material assistance, it orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

1

For the reasons set forth below, the court GRANTS defendant's motion.

## BACKGROUND[2]

On March 27, 2009, plaintiff filed a lawsuit against Marilyn Yawnick ("Yawnick") in this court, Evans v. Yawnick, et al., Civ. Case No. 09-844 JAM/GGH ("Yawnick Action"). (Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts ["SUF"], filed April 29, 2011 [Docket #21-1], ¶ 1.) In that suit, plaintiff sought injunctive relief and damages for alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), California Civil Code § 54 *et seq.* and the Unruh Civil Rights Act. (SUF ¶ 2.) On May 11, 2009, plaintiff and Yawnick reached a settlement, executing a Settlement Agreement and General Release (the "Agreement"). (SUF ¶ 3.)

The Agreement provided that the settlement was between plaintiff and Yawnick[3] "on behalf of herself, other affiliated partnerships, partners, companies, divisions, subsidiaries, insurers, and their officers, directors, employees, agents, attorneys, representatives, successors and assigns." (SUF ¶ 4.) In exchange for Yawnick's payment of $15,000.00, plaintiff agreed to the following:

(1) to "releas[e], acqui[t], and forever discharg[e] [Yawnick] and [her] respective parent companies, subsidiaries, lessors, successors, predecessors,

---

[2] Unless otherwise noted, the court finds the following facts undisputed.

[3] Franchise Realty Corp. was also a settling defendant in the Agreement; however, the company is not involved in this action, and thus, the court refers herein only to Yawnick.

2

        assigns, affiliates, officers, directors, partners, personal and legal representatives, agents, employees, and attorneys (the "Released Parties"), and each of them, from any and all claims of any kind and nature, character known or unknown, disclosed or undisclosed, which PLAINTIFF may now have, may in the future have, or have ever had against any of the Released Parties, including, but not limited to, any and all claims, rights, demands, causes of action for violations of the [ADA] . . ., violations of any other federal, state, local, or public accommodations statutes, rules, regulations, common law, or ordinances of any kind [SUF ¶ 5][;]"

(2)    to waive all rights under California Civil Code § 1542,[4] stating plaintiff "understands and expressly agrees that [the] Agreement extends to any and all claims of every kind and nature whatsoever, known or unknown, suspected or unsuspected, past or present, disclosed or undisclosed, which PLAINTIFF has or may have against [Yawnick] [SUF ¶ 6][;]" and

(3)    to "refrain from initiating any further litigation against [Yawnick] [Id.]."

In a prior draft of the Agreement, which was written by plaintiff's counsel in the Yawnick Action, plaintiff agreed to

---

[4] Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

refrain from initiating any further litigation against Yawnick, "solely in regard to the McDonald's Restaurant [which was the subject of the Yawnick Action] located at 1806 Fort Jones Road, Yreka, California;" the draft agreement provided that plaintiff was *not* precluded from "engaging in litigation against [Yawnick] as to any other potential claim arising from another location or matter." (SUF ¶ 7.) However, Yawnick's counsel negotiated with plaintiff to eliminate that provision; ultimately, as set forth above, plaintiff agreed to "refrain from initiating any further litigation against [Yawnick]." (SUF ¶ 8.)[5]

On August 26, 2010, plaintiff filed the instant action against defendant Y's Fries, Inc., alleging claims for violation of the ADA, California's Civil Rights Acts and the Unruh Civil Rights Act. (SUF ¶ 9.) Yawnick is the primary shareholder of Y's Fries, Inc. (SUF ¶ 10.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998).

---

[5] Plaintiff denies that Yawnick's counsel negotiated with plaintiff to eliminate this provision (SUF ¶ 8); however, plaintiff provides no basis for the denial of this fact, stating only that it is a "legal conclusion." (Id.) While the wording of defendant's statement of fact number 8 is, in part, a legal conclusion, the fact remains undisputed that plaintiff ultimately signed the Agreement which did not limit his release to only the Yawnick Action's McDonald's property. Rather, plaintiff agreed generally to refrain from initiating any further litigation against Yawnick. (Id.)

The evidence must be viewed in the light most favorable to the nonmoving party.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  See Nissan Fire & Marine, 210 F.3d at 1107.  Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## ANALYSIS

The interpretation of a settlement agreement is governed by principles of state contract law, even where a federal cause of

5

action is settled or released.  Botefur v. City of Eagle Point, 7 F.3d 152, 156 (9th Cir. 1993).  Under California law, the court must interpret the contract by examining the contract's language, the parties' clear intentions as expressed in the contract and the circumstances under which the parties contracted.  AIU Ins. Co. v. Sup. Ct., 51 Cal. 3d 807, 822 (1990).  The parties' intent is to be inferred, if possible, solely from the written provisions in the contract.  Id.  In assessing the parties' intent, the terms of the contract must be considered in the context of the contract as a whole.  Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").  Release, indemnity and similar exculpatory provisions are "binding on the signatories and enforceable so long as they are . . . 'clear, explicit and comprehensible in each [of their] essential details.'" Skrbina v. Fleming Cos., 45 Cal. App. 4th 1353, 1368 (1996).  As a general rule, contractual limitations on liability for future conduct must be clearly set forth.  Gallagher v. San Diego United Port District, Civ. 08-CV-886-IEG(RBB), 2009 WL 2781553, *5 (S.D. Cal. 2009).

Here, the Agreement clearly, on its face, extinguished all future claims of every kind and nature whatsoever, whether known, unknown or suspected which plaintiff had or may have against Yawnick.  As set forth above, plaintiff agreed to:
(1) "releas[e], acqui[t], and forever discharg[e] [Yawnick] and [her] respective parent companies, subsidiaries, lessors, successors, predecessors, assigns, [or] affiliates . . . from any

6

and all claims of any kind and nature, character known or unknown, disclosed or undisclosed, which PLAINTIFF may now have, may in the future have, or have ever had against [them], including, but not limited to, any and all claims, rights, demands, causes of action for violations of the [ADA] . . . [SUF ¶ 5][;]" (2) to waive all rights under California Civil Code § 1542, thus, agreeing that the release extended "to any and all claims of every kind and nature whatsoever, known or unknown, suspected or unsuspected, past or present, disclosed or undisclosed, which PLAINTIFF has or may have against [Yawnick] [SUF ¶ 6][;]" and (3) to "refrain from initiating any further litigation against [Yawnick] [Id.]."  The Agreement did not, in any respect, tie plaintiff's release of claims to the Yawnick Action, exclusively, or to the specific McDonald's property which was the subject of that earlier action.

   Plaintiff does not dispute that the instant complaint against defendant Y's Fries, Inc. is an action against Yawnick, as she is the primary shareholder of defendant.  Plaintiff only disputes that this action against Yawnick, *involving a different property*, is covered by the Agreement.  The basis for plaintiff's dispute is not clear; from his opposition, it appears plaintiff is asserting a public policy argument, arguing that it would be "unfair" or "unjust" to preclude his pursuit of this action since it involves a different property and different alleged violations of the ADA.  However, in support of this  argument, plaintiff cites wholly inapposite cases.  For example, in Botosan v. Paul McNally Realty, 216 F.3d 827, 833 (9th Cir. 2000), the Ninth Circuit held that a lease agreement between the owners and the

7

lessee could not transfer all liability for ADA compliance to the lessee.  Disabled Rights Action Committee, also relied upon by plaintiff, considered the issue of whether a private operator, who did not own the arena where a rodeo was conducted, could be held liable under the ADA.  Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861 (9th Cir. 2004).  Finally, in PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001), the United States Supreme Court addressed whether the ADA applies to professional golf tournaments.  Plaintiff fails to cite *any* case addressing a settlement agreement in an ADA case, and certainly, the above cases cited by plaintiff do not render, as plaintiff urges, the type of Agreement entered in this case invalid.[6]

    The Agreement's language in this case is clear.  Moreover, the parties' intent is evident considering, in particular, the draft agreement's language which sought to limit plaintiff's release to only the McDonald's property at issue in the Yawnick Action.  In the end, however, plaintiff agreed to a broad release of any future claims against Yawnick.  Plaintiff offers no facts to rebut defendant's showing.  The Ninth Circuit has repeatedly recognized that in a contract dispute, "[s]ummary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning."  See e.g. United States v. King Features Entertainment, Inc., 843 F.2d 394,

---

[6] Plaintiff is correct that the Gallagher case cited by defendant is factually distinguishable from this case in that in Gallagher, the same property was involved in the first and second cases.  However, it is not determinative of defendant's motion that this case involves a different property.  The parties were free to contract as they wished, and as set forth above, it is clear from the parties' conduct and the written agreement, that plaintiff agreed to release Yawnick from any future ADA claims.

8

398 (9th Cir. 1988).  Plaintiff fails to establish any ambiguity in the contract or otherwise refute the contract's plain language extinguishing any future claims against Yawnick.

## CONCLUSION

Accordingly, for the foregoing reasons, the court GRANTS defendant's motion for summary judgment.  The instant action is barred by the Agreement plaintiff entered into with Yawnick, settling the <u>Yawnick Action</u>.  The Clerk of the Court is directed to close this file.[7]

IT IS SO ORDERED.

DATED: May 19, 2011

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7] For the first time in its reply, in one conclusory sentence, defendant requests an award of fees on the ground plaintiff's "suit is clearly frivolous, unreasonable, and without foundation."  (Reply, filed May 5, 2011, at 3:4-5.)  As defendant fails to cite any legal authority for its request or provide any supporting declarations substantiating the fees' request, the court summarily DENIES it.

9